IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:19-CV-00115-KDB-DCK

| | |
|---|---|
| CHRISTINE ALDEN,<br><br>Plaintiff,<br><br>v.<br><br>REBECCA JONES, LEIA CROUSE, LISA OSBORNE AND ROBERT CRUMPTON,<br><br>Defendants. | **ORDER** |

**THIS MATTER** is before the Court on Defendant Robert Crumpton's Motion to Dismiss Amended Complaint, (Doc. No. 22), Defendants Leia Crouse, Rebecca Jones and Lisa Osborne's Motion to Dismiss, (Doc. No. 27) and Plaintiff Christine Alden's Motion for Leave to File Second Amended Complaint, (Doc. No. 29). The Court has carefully considered these motions, the parties' briefs and exhibits and the Amended Complaint. Because the Court finds that it lacks subject matter jurisdiction because of the Eleventh Amendment and the *Rooker-Feldman* doctrine, the Court will grant the motions to dismiss. Similarly, the Court will deny the motion for leave to file a second amended complaint because Plaintiff's proposed claims against an additional social worker and an expert witness would not be able to withstand a motion to dismiss for the same reasons and are therefore futile.

I.  **LEGAL STANDARD**

Under Rule 12(b)(1), a party may seek dismissal based on the court's "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The United States Courts are courts of specifically

1

limited jurisdiction and may exercise only that jurisdiction which Congress has prescribed. *Chris v. Tenet*, 221 F.3d 648, 655 (4th Cir. 2000) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Therefore, whether the Court has jurisdiction over the subject matter of a case must be considered before addressing its merits. *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999). The plaintiff bears the burden of proving that subject matter jurisdiction exists. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

In this action Plaintiff is proceeding *pro se*; therefore, the Court is required to liberally construe the pleadings, *see Erikson v. Pardus*, 551 U.S. 89 (2007). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys, and if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Estelle v. Gamble*, 429 U.S. 97 (1976), *Hughes v. Rowe*, 449 U.S. 5 (1980). However, a district court may not rewrite a *pro se* complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999), or "conjure up questions never squarely presented" to the court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Also, the requirement of liberal construction of *pro se* pleadings does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.,* 901 F.2d 387 (4th Cir. 1990); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II.     FACTS AND PROCEDURAL HISTORY

Plaintiff Christine Alden is a resident of Wilkes County, North Carolina and is the mother of two children, L.Y. and E.Y. On or about June 28, 2007, Plaintiff obtained a custody order in

Camden County, Georgia, where she was granted legal and physical custody of L.Y. and E.Y. (Doc. No. 19 (Amended Complaint) at ¶ 12). The plaintiff and her children moved to Sparta, North Carolina in May 2016. (*Id*. at ¶¶ 16-17).

In September 2016, L.Y. was caught viewing pornography. (*Id*. at ¶ 18). After an altercation between L.Y. and Alden over this incident, L.Y. was taken into custody and transported to Alexander Juvenile Detention Center. (*Id*. at ¶¶ 19-21). While in custody, L.Y. alleged that Alden was physically abusive, and L.Y. was placed in temporary foster care on grounds of neglect. (*Id*. at ¶ 22). The Alleghany County Department of Social Services ("DSS") investigated L.Y.'s allegation and instituted a case plan for the Plaintiff. (*Id*. at ¶¶ 23-24). As a result of the investigation and case plan, DSS workers regularly visited Plaintiff's home to verify the safety of her other son, E.Y. (*Id*. at ¶ 24).

Plaintiff alleges that when the DSS investigation began, she provided Osborne (the DSS Director) and Jones and Crouse, who are DSS social workers, with a copy of the Camden County custody order and "challenged Allegheny County's jurisdiction over L.Y. and E.Y." (*Id*. at ¶¶ 25-26). Defendants Osborne, Jones and Crouse (the "DSS Defendants") allegedly ignored Plaintiff's "jurisdictional challenge" and after allegations were made that the Plaintiff had mental health problems, was paranoid and used illegal drugs, the relationship between the Plaintiff and the DSS Defendants became "contentious." (*Id*. at ¶¶ 27-28).

On March 3, 2017, Jones, allegedly at the direction of Osborne and Crouse, wrote and filed a verified juvenile petition seeking to remove E.Y. from Plaintiff's custody. (*Id*. at ¶ 32).[1] The

---

[1] *See* Doc. No. 28, Exhibit 1 (March 3, 2017 Juvenile Petition in In the Matter of E.Y., 17 JA 7). The Court may consider this Exhibit in ruling on this motion to dismiss. *See Witthohn v. Fed. Ins.*

juvenile petition alleged that E.Y. was a neglected juvenile because he lived in an environment injurious to his welfare. As basis for the removal of E.Y. from Plaintiff's home, Jones, Crouse, and Osborne alleged that the Plaintiff was paranoid, had curtains over the window, and that there were firearms in the residence. (*Id*. at ¶ 33).

Along with this petition, Jones, Crouse and Osborne "created a non-secure custody order authorizing social services and/or law enforcement to forcibly enter plaintiff's residence to remove E.Y." (*Id*. at ¶ 35). Jones signed the order as the judge's designee, (*Id*. at ¶ 36), and pursuant to the custody order, E.Y. was "forcibly" removed from Plaintiff's home (*Id*. at ¶¶ 37-38). The Plaintiff contends that DSS Defendants "failed to perform their duties to confirm the trial court's jurisdiction" and deprived the court of information regarding the child's prior residence. (*Id*. at ¶ 59). When Alden moved Judge Crumpton to enforce the Georgia custody order, he ordered "plaintiff's motion to be stricken from the record and ignored the court's lack of jurisdiction." (*Id*. at ¶ 77). This petition, non-secure custody order and Judge Crumpton's rulings form the basis for Plaintiff's claims against the DSS Defendants and Judge Crumpton. (*Id*. at ¶¶ 39, 42, 47, 53, 57, 58, 64-65, 69, 77).

E.Y.'s neglect petition was heard on July 18, 2017, and the Honorable William F. Brooks adjudicated E.Y. to be neglected pursuant to N.C.G.S. § 7B-101. *See* Doc. No. 28 at Exhibit 3. Several subsequent review hearings on E.Y's neglect were conducted, and on February 1, 2019,

---

*Co*., 164 F. App'x 395, 396--97 (4th Cir. 2006) ("[A] court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed."); *Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) (on a motion to dismiss, defendant may also attach "official public records pertinent to the plaintiffs' claims").

the Honorable Jeanie R. Houston ruled that E.Y. was neglected, that continued placement of E.Y. in the Plaintiff's home was not appropriate, that reasonable efforts for reunification should cease, and that DSS had made reasonable efforts to avoid placing E.Y. in foster care. *See* Doc. No. 28 at Exhibit 4. The Court also ordered that E.Y. remain in DSS custody and that the permanent plan would be guardianship, with a concurrent plan of custody with an approved caretaker. *Id.* On February 27, 2019, the Plaintiff filed a notice of appeal of Judge Houston's February 1, 2019 Order.

On August 30, 2019, Plaintiff filed her *pro se* Complaint against Alleghany County, North Carolina; DSS; the Alleghany County Sheriff's Office and Robert Crumpton asserting claims under 42 U.S.C. § 1983 and various state law causes of action. (Doc. No. 1). After the Defendants filed motions to dismiss (Doc. Nos. 6, 16), Plaintiff filed an Amended Complaint (Doc. No. 19), removing the County, DSS and the Sheriff's Office as Defendants and adding the individual DSS Defendants in their place. Judge Crumpton is named as a defendant in both complaints. In the Amended Complaint Plaintiff asserts federal claims under Section 1983, 42 U.S.C. § 1985 and 18 U.S.C. § 241 and state law claims of negligence, gross negligence and intentional infliction of emotional distress against the DSS Defendants and claims under Section 1983 and for gross negligence against Judge Crumpton. All of the claims arise out of the Defendants' alleged actions related to the entry of the non-secure custody order that authorized the removal of E.Y. from Plaintiff's custody and Plaintiff's ultimate loss of the custody of her children through the proceedings held in the District Court division of the General Court of Justice in North Carolina.

5

## III.     DISCUSSION

Defendants contend that Plaintiff's Amended Complaint should be dismissed on multiple grounds. First, Judge Crumpton argues that this Court lacks subject matter jurisdiction over the claims against him according to the Eleventh Amendment. Also, all of the Defendants assert that the Court does not have subject matter jurisdiction because the *Rooker-Feldman* doctrine bars Plaintiff's claims. Finally, all of the Defendants claim that Plaintiff has failed to state a claim upon which relief can be granted because they have either absolute or qualified immunity from the asserted claims. With respect to Plaintiff's motion to further amend the complaint, Defendants argue that amendment of the complaint to add another DSS social worker and an expert witness who testified at the custody hearing would be futile for the same reasons and thus the motion to amend should be denied. As discussed below, the Court finds that it lacks subject matter jurisdiction of Plaintiff's existing and proposed claims because of the Eleventh Amendment and/or the *Rooker-Feldman* doctrine. Therefore, the Court will not reach the Defendants' additional arguments that Plaintiff's claims fail to state a claim for relief.[2]

---

[2] Although the Court does not reach the merits of Defendants' Rule 12(b)(6) arguments based on absolute immunity, those arguments appear to be meritorious as well. *See Imbler v. Pachtman*, 424 U.S. 409, 419 (1976) (stating that judicial "immunity applies even when the judge is accused of acting maliciously and corruptly, and it is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, in whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences"); *see Vosburg v. Dep't of Soc. Servs.*, 884 F.2d 133 (4th Cir. 1989) (social workers have absolute immunity from liability resulting from a decision to file a removal petition, which is deemed prosecutorial); *Vaughan v. Foltz*, 2017 WL 9480142 at *6 (E.D.N.C. 2017) (holding that social workers accused of using false statements to procure judicial orders and giving false testimony during judicial proceedings were entitled to absolute immunity).

## A. Subject Matter Jurisdiction over the Claims in the Amended Complaint

### 1. *Eleventh Amendment*

Judge Crumpton argues that a suit against him for monetary relief in his official capacity is barred by the Eleventh Amendment. The Court agrees. The Eleventh Amendment to the Constitution provides that the "Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has consistently held that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *Missouri v. Fiske*, 290 U.S. 18, 28 (1933); *Hans v. Louisiana*, 134 U.S. 1, 15 (1890). This immunity extends to "arms of the State," *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280 (1977), including state agencies and state officers acting in their official capacity, *Gray v. Laws,* 51 F.3d 426, 430 (4th Cir. 1995). A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *see also Nivens v. Gilchrist*, 444 F.3d 237, 249 (4th Cir. 2006) (noting that a claim for monetary damages against a state official in his official capacity is, in effect, "against the governmental entity" that employs the official).

While immunity under the Eleventh Amendment is not absolute, the exceptions are narrow. This defense is not available where one of the following applies: (1) where Congress, while acting pursuant to its powers under the Fourteenth Amendment, has properly abrogated a state's immunity, *Fitzpatrick v. Bitzer*, 428 U.S. 445, 452-56 (1976); (2) where a state has waived its

immunity to suit in federal court, *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999); or (3) where a private party sues an appropriate state officer for prospective injunctive or declaratory relief from an ongoing violation of federal law, *Ex parte Young*, 209 U.S. 123, 155-56 (1908).

Judge Crumpton is sued in this action in his official capacity as a District Court Judge in North Carolina's 23rd Judicial District. As such, he is a state judicial official of the District Court Division of North Carolina's General Court of Justice. N.C. Const. art. IV, §§ 2, 10; N.C. Gen. Stat. §§ 7A-4, -130 (2019). Thus, Judge Crumpton is immune from the claims asserted in this action under the Eleventh Amendment unless one of the exceptions to immunity apply.

None of the exceptions to the Eleventh Amendment immunity defense are applicable here. Congress has not abrogated state immunity related to the actions of judicial officers. And, neither the state of North Carolina nor Judge Crumpton has waived any immunity to which he is entitled under the Eleventh Amendment. Finally, although Plaintiff has asserted claims for declaratory and injunctive relief against Judge Crumpton, those claims relate entirely to his rulings during prior juvenile court proceedings and are therefore *retrospective* not prospective in nature. Accordingly, Plaintiff's claims against Judge Crumpton for monetary relief are barred by the Eleventh Amendment, and consequently the Court does not have subject matter jurisdiction over those claims.

As noted, in addition to seeking monetary damages against Judge Crumpton, Plaintiff seeks declaratory relief that her constitutional rights have been violated by Defendants and an order enjoining Defendants from engaging in the unlawful acts described in the complaint. (Doc. No. 19 at 16). While the claims are asserted individually against Judge Crumpton, in practical effect

Plaintiff is seeking relief regarding the rulings in a state juvenile district court matter over which the federal courts do not have jurisdiction. The district court division of North Carolina's General Court of Justice has exclusive, original jurisdiction over any cases involving a juvenile who is alleged to be abused, neglected, or dependent. N.C. Gen. Stat. § 7B-200. Since Plaintiff has not alleged a waiver of sovereign immunity by Congress, that the State has consented to waive its sovereign immunity for these claims, or that she is seeking *prospective* injunctive relief from an ongoing violation of federal law by Judge Crumpton, the Eleventh Amendment operates to also bar her non-monetary claims against Judge Crumpton in his official capacity. Thus, the claims against Judge Crumpton in his official capacity[3] will be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rule of Civil Procedure. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 480 (4th Cir. 2005).

   2. The *Rooker-Feldman* Doctrine

The *Rooker–Feldman* doctrine takes its name from two decisions of the Supreme Court - *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Under those precedents, federal courts are barred from exercising

---

[3] Although Plaintiff states that Judge Crumpton is only being sued in his official capacity, Doc. No. 25 at 1, the Eleventh Amendment would also bar Plaintiff's claim against Judge Crumpton in his individual capacity as he is a state employee of the Judicial Department of the State of North Carolina. The State of North Carolina provides for the defense of any employee or former employee in a civil action brought against them in their official or individual capacity, or both, on account of an act or omission made in the scope and course of their employment as a State employee. N. C. Gen. Stat. § 143-300.3. Furthermore, the State of North Carolina would have to pay "a final judgment awarded in a court of competent jurisdiction against a State employee." N.C. Gen. Stat. § 143-300.6. Thus, North Carolina's treasury would be affected by Plaintiff's claims for monetary relief against Judge Crumpton in his individual capacity, and, therefore, Plaintiff's claims against him are also barred by the Eleventh Amendment. *See Nivens v. Gilchrist*, 444 F.3d 237 (4th Cir. 2006).

jurisdiction in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). The *Rooker–Feldman* doctrine has also been described as applicable to circumstances where "[t]he losing party in state court filed suit in a U.S. District Court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking federal-court review and rejection of that judgment." *Skinner v. Switzer*, 562 U.S. 521, 531 (2011).

Thus, the doctrine generally prohibits federal district courts from reviewing state court decisions while preserving the moving party's right to seek review in the state court appellate system. *Plyler v. Moore*, 129 F.3d. 728, 731 (4th Cir. 1997). Federal courts are prohibited from determining that state court judgments were erroneously entered or from taking action that would render state court judgments ineffectual. *Jordahl v. Democratic Party of Va.*, 122 F.3d. 192, 202 (4th Cir. 1997). Except in limited circumstances not applicable here, the only federal court with the authority to reverse or modify the judgments of state courts is the Supreme Court itself. *Exxon Mobil*, 544 U.S. at 283 (citing 28 U.S.C. § 1257).

The *Rooker-Feldman* doctrine further prohibits federal court determination of issues "inextricably intertwined" with issues considered by the state court. *Washington v. Wilmore*, 407 F.3d. 274, 279 (4th Cir. 2005); *see also Davani v. Virginia Dep't of Transp.*, 434 F.3d. 712, 719 (4th Cir. 2006). As the Fourth Circuit stated,

> The *Rooker-Feldman* doctrine bars consideration not only of issues actually presented to and decided by a state court, but also of constitutional claims that are 'inextricably intertwined with' questions ruled upon by a state court, as when success on the federal claim depends upon a determination 'that the state court wrongly decided' the issues before it.

10

*Plyler*, 129 F.3d. at 731.

In this federal lawsuit, the Plaintiff seeks damages resulting from the state court petition and order to place E.Y. in non-secure custody. (Am. Complaint, ¶¶ 39, 42, 47, 53, 57, 58, 64-65, 69). The petition and non-secure custody order were the initial steps in the process of adjudicating E.Y. to be neglected. Accordingly, plaintiff's claims in this case are dependent upon this Court's review of the state court removal and custody decisions, which are currently under appeal in the state court system. In order to grant the Plaintiff any relief, the Court would have to determine that the state court judgments were erroneously entered or take action that would render the state court judgments ineffectual. This Federal court review of state court decisions is precisely what is barred by *Rooker-Feldman*. *See*, e.g., *Stratton v. Mecklenburg County Dept. of Social Services*, 521 Fed. Appx. 278 (4th Cir. 2013) (dismissing complaint for lack of subject matter jurisdiction under *Rooker-Feldman* because Plaintiffs' allegations related directly and were inextricably intertwined with the North Carolina courts' termination of the plaintiffs' parental rights); *Price v. Cleveland County Department of Social Services*, 2017 WL 5075257 at * 2 (W.D.N.C. 2017) (plaintiff's federal lawsuit challenging the issuance of a no-contact order with her children in state court barred by the *Rooker-Feldman* doctrine because "the Plaintiff appears to challenge the orders of a state court in a custodial proceeding"); *Moore v. Commonwealth of Virginia Department of Social Services*, 2016 WL 775783 at * 1, 5-6 (E.D. Va. 2016) (*Rooker-Feldman* doctrine bars section 1983 civil rights complaint alleging the denial of due process arising from a state child support order); *Silvers v. Iredell County Department of Social Services*, 2016 WL 427953 at * 12 n.9 (W.D.N.C. 2016) (federal court has no power to review state custody hearing).

Accordingly, this Court lacks subject matter jurisdiction over Plaintiff's claims, and the Amended Complaint will be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

### B. Motion for Leave to Amend Complaint and Add Parties

Rule 15(a) of the Federal Rules of Civil Procedure requires that leave to file an amended complaint be "freely given when justice so requires." Fed. R. Civ. Proc. 15. Consistent with that lenient standard, the Supreme Court has held that "[i]f the circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded the opportunity to test his claim on the merits." *See Foman v. Davis,* 371 U.S. 178, 182 (1962). However, the opportunity to amend a complaint is not unbounded. Leave to amend a pleading should be denied "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would [be] futile." *Laber v. Harvey,* 438 F.3d 404, 426 (4th Cir. 2006) (*quoting Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 509 (4th Cir. 1986), *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

Plaintiff seeks to amend her complaint a second time to add claims against Charity Ballou, a DSS social worker, and Dr. Sophia Yuan, who testified as an expert witness at the juvenile proceedings involving E.Y. Because the proposed claims asserted against Ballou and Dr. Yuan could not survive a motion to dismiss under the *Rooker-Feldman* doctrine for the same reasons discussed above, any amendment would be futile. Therefore, Plaintiff's motion to amend must be denied. *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995); *Woods v. Boeing Co.*, 841 F. Supp. 2d 925, 930 (D.S.C. 2012) (citation omitted) ("If an amendment would fail to withstand a motion to dismiss, it is futile.").

As with the claims against the DSS Defendants, the claims against the new proposed defendants relate to their conduct in or related to the juvenile proceedings in which Plaintiff's custody of her son was determined. *See* Doc. No. 29-1 at ¶ 60 (accusing Ballou of wrongful conduct "[d]uring the pendency of the juvenile court proceedings"); ¶¶ 62, 63 (claims against Dr. Yuan relate to her "recant[ing]" her favorable opinion of Plaintiff and made "unfavorable" recommendations "directly to the trial court"). Indeed, the lone cause of action that includes allegations against Ballou and Dr. Yuan alleges – in a conclusory allegation lacking any supporting facts – that they were engaged in a "conspiracy"[4] with the DSS Defendants to deny Plaintiff her "right to care, custody and control of her children." Therefore, as with the DSS defendants, the Court's adjudication of Plaintiff's putative claims against Ballou and Dr. Yuan would inevitably require the Court to review the issues resolved by the state court's juvenile court decisions. This is not permitted under the *Rooker-Feldman* doctrine so Plaintiff's proposed amendment would be futile and thus the motion to amend ought not be granted.

---

[4] Plaintiff's conclusory allegations of conspiracy also fail to state a claim on which relief can be granted and are futile for that reason as well as the absence of subject matter jurisdiction. *See League of United Latin Am. Citizens-Richmond Region Council 4614 v. Pub. Interest Legal Found.*, No. 1:18-CV- 00423, 2018 WL 3848404, at *4 (E.D. Va. Aug. 13, 2018) (holding that "the Fourth Circuit has rejected [conspiracy to violate civil rights] claims whenever a purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts").

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant Robert Crumpton's Motion to Dismiss Amended Complaint (Doc. No. 22) is **GRANTED**;

2. Defendants Leia Crouse, Rebecca Jones and Lisa Osborne's Motion to Dismiss (Doc. No. 27) is **GRANTED**;

3. Plaintiff Christine Alden's Motion for Leave to File Second Amended Complaint (Doc. No. 29) is **DENIED; and**

4. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: February 25, 2020

Kenneth D. Bell
United States District Judge